UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| David Case, Sharon Case, Jay D. Smith, Dana Smith, Roger Harris, Sandra Harris, Stuart B. Bernthol and Marietta D. Bernthol, as co-trustees of the Bernthol Family Trust dated September 6, 1991, Kim Goodwin, Margie Goodwin, and Phil Reed Properties Ltd., LLLP, Charles and Diane Nichols, Edwin L. Rindfusz, Rose M. Rindfusz, Kenneth Stithem, and Laurie Stithem, each individually and on behalf of a class similarly situated,<br><br><div align="center">Plaintiffs,</div><br>vs.<br><br>French Quarter Group III, LLC, Resort Funding, LLC, Spinnaker Development Corp., Inc., Southwind Management Corp., Southwind Holdings, Inc., Ken Taylor, and Brian Taylor,<br><br><div align="center">Defendants.</div> | Case No. 9:12-cv-2804-SB<br><br><br>**SECOND AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

The Plaintiffs, for their Second Amended Complaint against the Defendants, state as follows:

## I.    PARTIES

1.    David Case and Sharon Case are individuals and residents of Norborn, Missouri.

2.    Jay D. Smith and Dana Smith are individuals and residents of Canyon, Texas.

3.    Roger Harris and Sandra Harris are individuals and residents of Vicksburg, Mississippi.

4.    Kim and Margie Goodwin are individuals and residents of St. Louis, Missouri.

5.    Stuart B. Bernthol and Marietta D. Bernthol bring this action as co-trustees of the

Bernthol Family Trust dated September 6, 1991, which is resident of Tarzana, California.

6.    Phil Reed Properties Ltd., LLLP is a limited liability partnership with residence in Franklin, North Carolina.

7.    Charles E. and Diane E. Nichols are individuals and residents of Claremore, Oklahoma.

8.    Edwin L. and Rose M. Rindfusz are individuals and residents of Dothan, Alabama.

9.    Kenneth and Laurie Stithem are individuals and residents of Lincoln, Nebraska.

10.    David Case, Sharon Case, Jay D. Smith, Dana Smith, Roger Harris, Sandra Harris, Stuart B. Bernthol and Marietta D. Bernthol, as co-trustees of the Bernthol Family Trust dated September 6, 1991, Kim and Margie Goodwin, and Phil Reed Properties Ltd., LLLP, are each representative of a proposed nationwide class ("Building 8 Class") consisting of the following:  All purchasers of interests in the Building 8 of the French Quarter development in Branson, Missouri.

11.    The Smiths and the Goodwins are representatives of a proposed subclass ("Resort Funding Building 8 Subclass") that consists of the following: All purchasers of interests in Building 8 of the French Quarter Development in Branson, Missouri (1) who financed some or all of the purchase of the interest, and (2) whose financing contract was assigned, sold, transferred to, or serviced by Resort Funding, LLC.

12.    Charles E. Nichols, Diane E. Nichols, Edwin L. Rindfusz, Rose M. Rindfusz, Kenneth and Laurie Stithem are each representative of a proposed nationwide class ("Building 9 Class") consisting of the following:  All purchasers of interests in the Building 9 of the French

Quarter development in Branson, Missouri.

13.    The Stithems and the Rindfusz' are representatives of a proposed subclass ("Resort Funding Building 9 Subclass") that consists of the following: All purchasers of interests in Building 9 of the French Quarter Development in Branson, Missouri (1) who financed some or all of the purchase of the interest, and (2) whose financing contract was assigned, sold, transferred to, or serviced by Resort Funding, LLC.

14.    French Quarter Group III, LLC is a South Carolina limited liability company with principal place of business in Hilton Head, South Carolina.

15.    Resort Funding, LLC is a Delaware limited liability company, with principal place of business in Syracuse, New York.  Resort Funding consents to the personal jurisdiction of this Court for this action.

16.    Spinnaker Development Corp., Inc., ("Spinnaker") is a South Carolina corporation.  Upon information and belief, Spinnaker is an owner, or owned at all relevant times, an interest in Regency Resorts and Regency Holding.

17.    Southwind Management Corp. is a South Carolina corporation with principal place of business in Hilton Head, South Carolina.

18.    Southwind Holdings, Inc. is a South Carolina corporation with principal place of business in Hilton Head South Carolina.

19.    Ken Taylor is an individual and resident of Hilton Head, South Carolina.

20.    Brian Taylor is an individual and resident of Hilton Head, South Carolina.

## II.    JURISDICTION AND VENUE

21.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because

the amount in controversy exceeds $5,000,000, and the majority of the members of the proposed classes are residents of a state other than South Carolina and Delaware, which are the residences of the Defendants.

22.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this matter contains claims brought under federal statutes.

23.    Venue is proper in this jurisdiction because the closings for the transactions at issue in this case were performed in Hilton Head, South Carolina, one or more of the Defendants are resident of this district, and this case involves contracts entered into by South Carolina corporations.

## III.    FACTUAL BACKGROUND

24.    All Plaintiffs in this case purchased timeshare interests in Building 8 or Building 9 in the French Quarter development in Branson, Missouri. All those interests were extinguished by foreclosure and bankruptcy, so that the Plaintiffs have lost the interests they purchased in the French Quarter.

### A.    French Quarter Corporate Structure

25.    The French Quarter development was owned and controlled by Ken Taylor and his son Brian Taylor through complex group of sham corporations and limited liability companies, which included Whiteoaks Management Corp, TorSouth, LLC, Anodyne, LLC, Regency Vacation Group, LLC, Regency Holdings Group, LLC, Regency Resorts, Inc., Spinnaker Development Corporation, Inc., Southwind Management Corp., Southwind Holdings, Inc., Southwind Sales and Marketing, Inc., Resort Amenities Group, French Quarter Group, LLC, French Quarter Group II, LLC, and Grand Regency Group, LLC, and others (collectively

the "French Quarter Entities").

26.    The French Quarter Entities failed to observe corporate formalities, had no functioning officers, failed to pay dividends, failed to maintain separate books, were undercapitalized and/or were insolvent at all relevant times.

27.    The French Quarter Entities were part of an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities.

28.    The French Quarter Entities were the alter egos for, or instrumentalities of Ken Taylor, Brian Taylor and/or one another.

29.    The French Quarter Entities were formed, maintained and used to perpetrate fraud, unfair trade practices and other wrongful conduct on the Plaintiffs.

30.    Beginning in or about January 1, 2005, Spinnaker operated the French Quarter development through a holding company known as Regency Resorts, which held the interests of French Quarter Group, LLC, French Quarter Group II, LLC, French Quarter Group III, LLC and Grand Regency Group, LLC.

31.    French Quarter Group, LLC, French Quarter Group II, LLC, and Grand Regency Group, LLC (collectively referred to herein as "French Quarter") are currently under the administration of the Chapter 7 Trustee in the U.S. Bankruptcy Court for the District of South Carolina.

**B.    The Purchase and Loss of French Quarter timeshares.**

32.    On or about July 11, 2006, David and Sharon Case entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 in

Branson, Missouri, for $34,900.

33.    On or about August 5, 2007, Jay and Dana Smith entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 for $16,900.  The Smiths financed $15,210 of the purchase with an installment note, which upon information and belief, was assigned to Resort Funding.

34.    On or about August 1, 2006, The Bernthol Family Trust entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 for $21,900.

35.    In or about 2006, Phil Reed Property Ltd., LLLP entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 for $190,000.

36.    On or about July 16, 2006, Roger and Sandra Harris entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 for $15,000.

37.    On or about March 20, 2006, Kim and Margie Goodwin entered an agreement with French Quarter Group II, LLC to purchase a timeshare interest in French Quarter Building 8 for $21,900.  The Goodwins financed $4,900 of the purchase with an installment note, which upon information and belief, was assigned to Resort Funding.

38.    In or about November 24, 2007, Charles E. and Diane E. Nichols entered an agreement with French Quarter Group III, LLC to purchase a timeshare interest in French Quarter Building 9 for $30,990.

39.    On or about May 1, 2007, Edwin L. and Rose M. Rindfusz entered an agreement

with French Quarter Group III, LLC to purchase a time share interest in French Quarter Building 9 for $31,000. Mr. and Ms. Rindfusz funded a portion of the purchase with an installment note, which was serviced by Resort Funding.

40.     On or about October 25, 2007, Kenneth and Laurie Stithem entered an agreement with French Quarter Group III, LLC to purchase a time share interest in French Quarter Building 9 for $20,990. Mr. and Ms. Stithem funded a portion of the purchase price with a promissory note which was serviced by Resort Funding.

41.     All Plaintiffs purchased timeshare interests in Building 8 or 9 by signing "Interval Ownership Contract Agreement and Installment Note" (collectively referred to as "Timeshare Notes").

42.     The purchase agreements provide that the, "Seller shall cause to be recorded a warranty deed conveying title to the property, free and clear of all encumbrances."

43.     At the time of the sale, all Plaintiffs received which warrant seisin, good right to convey, against encumbrances, further assurances, quiet enjoyment, and warrant and defend.

44.     French Quarter Group II, LLC executed Warranty Deeds to the Building 8 Class.

45.     French Quarter Group III, LLC executed Warranty Deeds to the Building 9 Class.

46.     All Plaintiffs received a HUD-1 settlement statement which showed that the Plaintiffs purchased title insurance from Plantation Title, and that the settlement of the transaction would occur in Hilton Head South Carolina on the date of sale.

47.     French Quarter delivered all Plaintiffs a "Sales Certificate" at the time of sale, which provides, "Declarant has no knowledge of any pending suits material to the Condominium."

48.    French Quarter Group II, LLC had no interest in the Building 8 property.

49.    French Quarter Group III, LLC had no interest in the Building 9 property.

50.    Building 8 and surrounding properties were subject to several liens which were not released upon closing of the timeshare sales.

51.    The property necessary to the development of Building 9 was subject to several liens which were not released upon closing of the timeshare sales.

52.    French Quarter never filed the documents necessary to create enforceable timeshare interests in Building 8 or Building 9.

53.    French Quarter never had the assets or financial wherewithal to pay off the loans secured by Building 8.

54.    French Quarter never had the assets or financial wherewithal to construct Building 9.

55.    French Quarter never constructed Building 9.

56.    French Quarter failed to pay deeds of trust on the Building 8 property.

57.    All Defendants had actual knowledge that French Quarter was not paying other lenders with security interests in Building 8 and the Building 9 property.

58.    All Defendants conspired to avoid the payment of secured liens on the timeshare interests sold.

59.    In or about 2006, Ozark Auto Show, which had a deed of trust on Building 8, began a proceeding to foreclose its deed of trust.

60.    Despite the fact that a foreclosure was pending on the property, French Quarter Group continued to sell timeshare interests in Building 8 and Building 9.

61.     Resort Funding continued to accept assignments of Timeshare Notes and forward money under the Hypothecation Agreement despite the fact that it knew that the pending foreclosure would negate any interests of the Building 8 Class.

62.     Resort Funding serviced the Timeshare Notes on Building 9, and continued to service such notes despite the fact that it knew, or should have known, that Building 9 could not and would not be built.

63.     All Defendants concealed their knowledge of title problems, the pending foreclosure and French Quarter financial difficulties from the Plaintiffs.

64.     Prior to April 2012, the Plaintiffs had been allowed to use their interests in Building 8.

65.     Prior to January 1, 2013, all Plaintiffs were allowed to use their interests in Building 8 or Building 9 to stay in other French Quarter buildings and to trade their units through a timeshare trading company.

66.     On March 1, 2010, French Quarter filed for protection under the United States Bankruptcy Code in South Carolina in an attempt to stop the foreclosure.

67.     The U.S. Bankruptcy Court consolidated the estates of all three French Quarter entities, in recognition of the fact that the entities failed to maintain separate identities.

68.     On or about April 9, 2012, Ozark Auto Auction completed the foreclosure of Building 8.

69.     Building 8 was purchased at foreclosure by 363-1401 GMD, LLC, and that company has indicated that it owns the property free and clear of any interest of the Plaintiffs. On April 14, 2012, 363-1401 GMD changed the locks on the building and has denied the

Plaintiffs entry into the building.

70.    On July 18, 2012, the Bankruptcy Trustee sold all the assets of the French Quarter, including the land on which Building 9 was to be constructed, to Southwind Holdings.

**C.    Property Management by Southwind Management**

71.    Southwind Management, Inc. is a company owned indirectly by Ken Taylor. The company purports to be property manager for owners of several resorts developed by Ken Taylor.

72.    Ken Taylor has exclusive control over Southwind Management, and made or condoned all decisions and actions which are material to this case.

73.    French Quarter Condominium III Owners Association, Inc., and French Quarter Condominium IV Owners Association, Inc., ("POAs") purport to be "property owner associations."  However, these entities are directed and controlled exclusively by Ken Taylor individually and through companies he owns and controls – Southwind Management and Spinnaker Development Corp.

74.    At the direction of Ken Taylor, Southwind Management was appointed property manager for the POAs for Building 8 and Building 9 properties.

75.    Despite the knowledge that the Building 8 timeshare sales were invalid and that Building 9 could not be built, Southwind Management billed and collected management fees, maintenance fees, taxes, and assessments from all Defendants on behalf of the POAs.

76.    With full knowledge that Building 8 timeshare sales were invalid and that Building 9 could not be built, Southwind Management and/or Spinnaker Development, acting at the direction of Ken Taylor, directed Resort Funding to continue collections of Timeshare Notes.

77.    The fraudulent collections from the Timeshare Notes were used to reduce the debts of Spinnaker Development, Regency Holdings, Brian Taylor and his spouse, Deanne Taylor.

78.    Ken Taylor and Brian Taylor, individually and through the direction of Southwind Management, Spinnaker Development and the POAs, concealed the truth about title problems, the financial issues and the pending foreclosure from the Plaintiffs.

79.    In or about December 2010, Southwind Management gave the Plaintiff classes their first notice that there was a foreclosure on Building 8.

80.    Southwind Management represented to the Plaintiffs that it had obtained legal representation for the Plaintiffs in the Bankruptcy and Foreclosure proceedings, and Southwind Management collected money from the Plaintiffs for the purported purpose of obtaining this legal representation.

81.    In fact, the Plaintiffs had no representation of their interests in bankruptcy or the foreclosure, and Southwind Management acted only to protect the interests of Ken Taylor and companies he owns or controls.

82.    Beginning in or about January 2013, Southwind Management finally acknowledged that the owners in the Building 8 class did not own that property and that Building 9 would never be built.

83.    Southwind Holding purchased all the assets of French Quarter from bankruptcy, including the right to collect on and enforce the Timeshare Notes.

84.    Southwind Holding is owned and controlled by Ken Taylor and managed by the same people and entities that owned and managed French Quarter.

85.     Ken Taylor used the bankruptcy and his related entities in an attempt to shed himself and his companies for liabilities that he committed in the management of the French Quarter.

**D.     Resort Funding**

86.     Beginning in or about 2001, Resort Funding provided development financing to the French Quarter and related entities.  The funding was initially provided by Equivest Capital, Inc., and in 2004 Resort Funding took over as part of a corporate restructuring.

87.     On or about December 29, 2005, Resort Funding loaned $6 million to French Quarter Group, LLC, French Quarter Group II, LLC and Grand Regency Group, LLC for the construction of buildings 6 and 8 in the French Quarter Development ("Construction Loan").

88.     On or about December 29, 2005, Resort Funding entered an agreement to loan up to $15 million to French Quarter Group, LLC, French Quarter Group II, LLC and Grand Regency Group, LLC based upon the assignment of receivables from the sale of timeshare interests in Buildings 6 and 8 in the French Quarter Development ("Hypothecation Agreement").

89.     In or about February, 2007 Resort Funding loaned French Quarter Group II to loan the company $400,000 for the purchase and development of additional real property to construct and sell timeshare interests in Building 9.

90.     At the direction of Ken Taylor, Spinnaker and Regency Holding Group guarantied the obligations of the French Quarter under the Hypothecation Agreement and Construction Loan.

91.     As part if its involvement in the French Quarter:

        a.      Resort Funding was the exclusive provider of financing to consumers for

sales of French Quarter timeshare units;

b.      Resort Funding reviewed and approved budgets for the French Quarter developments;

c.      Resort Funding reviewed and approved sales and financial projections;

d.      Resort Funding reviewed each sale before approval of financing;

e.      Resort Funding reviewed and approved all document forms used in the sale the timeshares to consumers;

f.      Resort Funding reviewed and approved all document advertising and marketing used in the sale the timeshares;

g.      Resort Funding required that French Quarter use Regency Vacation Group as the sales agent for all sales;

h.      Resort Funding required that French Quarter refinance certain loans through Resort Funding only;

i.      Resort Funding required that for each eligible receivable purchased, French Quarter provide a title commitment and insurance insuring Resort Funding's interest in the title;

j.      Resort Funding had the right to review and approve the declarations of condominium, which must be filed in the land records of Taney County Missouri to create valid timeshare interests;

k.      Resort Funding required French Quarter to cross-collateralize all its lending with the notes sold;

l.      Resort Funding acted as servicer on notes which were not assigned to

Resort Funding.

92.     At the time Resort Funding and French Quarter entered and performed under the Construction and Hypothecation agreements, Resort Funding had actual and/or constructive knowledge:

a.     That the building 8 property was owned by Grand Regency Group, LLC;

b.     That the building 8 property was subject of at least three prior deeds of trust in favor of Ozark Auto Show, FQI and Great South Bank;

c.     That the deeds of trust to Ozark Auto Show, FQI and Great South Bank were in default and not being paid from the proceeds of sales;

d.     That the procedures for sales of timeshares did not reasonably protect the interests of the Plaintiff consumers;

e.     That French Quarter had not filed a declaration of condominium and other documents necessary to create an enforceable timeshare interests on behalf of the buyers;

f.     That the Plaintiffs were not receiving clear title to the property;

g.     That the Plaintiffs' title was not insured;

h.     That French Quarter had never been profitable and was insolvent.

93.     Despite this knowledge, Resort Funding obtained the Timeshare Notes from French Quarter, transferred money or credit to French Quarter and collected on the Timeshare Notes.

94.     French Quarter used money from Resort Funding to continue its sales of timeshare interests in Building 8 and Building 9, and the money raised under the Hypothecation Agreement was essential to the continuing operations of the French Quarter.

95.     Resort Funding had actual knowledge that French Quarter was using money advanced by Resort Funding to sell invalid interests and to sell future interests which French Quarter could not build.

96.     Resort Funding agreed to service Timeshare Notes on Building 9 at a time it had actual knowledge that Building 9 could not, and would not be built.

97.     Resort Funding sent materially false and misleading billing statements to purchasers of Building 8 and Building 9 in collecting on the Timeshare Notes debts.

**E.      Class Allegations**

98.     The French Quarter sold 828 units in Building 8 and 310 units Building 9.

99.     The claims of David Case, Sharon Case, Jay D. Smith, Dana Smith, Roger Harris, Sandra Harris, Stuart B. Bernthol and Marietta D. Bernthol, as co-trustees of the Bernthol Family Trust dated September 6, 1991, Kim Goodwin, Margie Goodwin, Phil Reed Properties Ltd., LLLP and all members of the Building 8 Class have identical legal and factual issues and these issues predominate over other issues in the case – to wit, all Class 8 plaintiffs purchased the same interests in the same way and all Class 8 plaintiffs were damaged by the actions of the Defendants as outlined herein.

100.    The claims of the named Class 8 plaintiffs are typical of all claimants in Class 8 because the facts as stated herein apply equally to all members of the Class.

101.    The claims of Charles and Diane Nichols, Edwin L. Rindfusz, Rose M. Rindfusz, Kenneth Stithem, and Laurie Stithem and all members of the Building 9 have identical legal and factual issues and these issues predominate over other issues in the case – to wit, all Class 9 plaintiffs purchased the same interests in the same way and all Class 9 plaintiffs were damaged

by the actions of the Defendants as outlined herein.

102.    The claims of the named Class 9 plaintiffs are typical of all claimants in Class 9 because the facts as stated herein apply equally to all members of the Class.

103. The claims of the Smiths and the Goodwins have identical legal and factual issues with all members of the Resort Funding Building 8 Subclass; these issues predominate over other issues in the case; these claims are typical of all class members, and a class action is the best method for resolution of those claims.

104. The claims of the Stithems and the Rindfusz' have identical legal and factual issues with all members of the Resort Funding Building 9 Subclass; these issues predominate over other issues in the case; these claims are typical of all class members, and a class action is the best method for resolution of those claims.

105.    The certification of classes as outlined herein is superior to the adjudication of individual claims because of the close identity of the circumstances surrounding the claims and identical nature of the causes of damages.  The certification of classes will promote judicial economy and prevent the entry of inconsistent judgments.

### FOR A FIRST CAUSE OF ACTION
**BREACH OF CONTRACT AGAINST RESORT FUNDING,
SOUTHWIND MANAGEMENT, SPINNAKER DEVELOPMENT CORP.,
KEN TAYLOR, AND BRIAN TAYLOR**

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

**A.    Contracts between Plaintiffs and French Quarter Group**

106.    French Quarter Group II, LLC and French Quarter Group III, LLC entered contracts with all Plaintiffs to sell timeshare interests in Building 8 and 9.

107.    French Quarter Group II and III provided warranty deeds to the Plaintiffs for their

interests in Building 8 and 9.

108.    French Quarter Group II and III breached the contracts and deed warranties, in several ways, including the failure to deliver clear title, the failure to defend title, the failure to provide notice to the Plaintiffs, the failure to reveal known facts, and other failures to be proven at trial.

109.    Resort Funding, Ken Taylor, Brian Taylor, Spinnaker Development, and Southwind Management are jointly and severally liable for the breaches of contract and warranty by the French Quarter Group II and III to all Plaintiffs because in these transactions, (1) French Quarter Group II and III were acting as duly authorized agents of these Defendants, (2) French Quarter Group II and III were the mere instrumentality or alter ego of these Defendants, and/or (3) French Quarter Group II and III were partners and joint venturers with these Defendants.

110.    The Court should pierce the corporate veil and hold that Ken Taylor, Brian Taylor, Spinnaker Development, and/or Southwind Management are liable under these contracts.

111.    As a direct and proximate result of these breaches of contract, all Plaintiffs were damaged by losing their entire investment in the French Quarter.

112.    These breaches of contract were accompanied by the wrongful acts of the Defendants as outlined herein, including the concealment of material facts from the Plaintiff and the conspiracy to defraud the Plaintiffs, and the Plaintiffs are entitled to an award of punitive damages.

**B.    Contracts assumed by Resort Funding**

113.    In accepting assignment of installment sale contracts from the French Quarter entities, Resort Funding assumed a contractual duty of good faith and fair dealing to members of

Resort Funding subclasses.

114.   Resort Funding breached that duty by its actions as outlined in this Complaint, including but not limited to:

a.    Acquiring loans when it knew or should have known that the timeshare interests were not properly perfected;

b.    Loaning money to French Quarter when it knew or should have known that such lending was supporting a fraudulent ;

c.    Failing to follow generally accepted banking practices which would have prevented the Plaintiff's losses;

d.    Collecting money from the Plaintiffs when it knew or should have known that the Plaintiffs interests were invalid or would be lost; and

e.    Concealing from the Plaintiffs known facts regarding their loans and title.

115.   As a direct and proximate result of Resort Funding's breaches of duty, the Resort Funding subclasses were harmed by the loss of their interests and the payment of principal, fees and interest on a fraudulent investment.

116.   These breaches of contract were accompanied by the wrongful acts as outlined herein, including the concealment of material facts and the participation in a conspiracy against the Plaintiffs.  As a result of these wrongful acts, the Resort Funding Subclass Plaintiffs are entitled to an award of punitive damages in addition to actual and consequential damages.

**C.    Contracts between All Plaintiffs and Southwind Management**

117.   Southwind Management entered contracts with the French Quarter Condominium III Owners Association, Inc., and/or French Quarter Condominium IV Owners Association, Inc.,

("POAs") for the benefit of the Plaintiffs.

118.    Pursuant to that contract, Southwind Management owed express and implied duties to the Plaintiffs to manage the association competently and in good faith.

119.    Southwind Management breached that contract by:

a.    Concealing defects in the Plaintiffs title, and concealing the foreclosure of the Plaintiffs' interests;

b.    Engaging in conflict of interest by protecting the interests of Ken Taylor, Spinnaker Development Corp., Brian Taylor, and Southwind Management at the expense of the Plaintiffs' best interests;

c.    Failing to take reasonable action to protect the Plaintiff's timeshare interests;

d.    Collecting maintenance fees and other fees with knowledge that the Plaintiffs would not receive title to their purchases;

e.    Failing to property hire and supervise management and employees;

f.    Other actions as outlined herein.

120.    As a direct and proximate result of these breaches of contract, all Plaintiffs were damaged by losing their entire investment in the French Quarter and by paying maintenance fees and costs on buildings for which the Plaintiffs did not have good title.

121.    Southwind Management's breaches of contract were accompanied by the wrongful acts as outlined herein, including the fact that Southwind Management engaged in conflicts of interests and concealed material information from the Plaintiffs. As a result of these wrongful acts, Plaintiffs are entitled to an award of punitive damages.

## FOR A SECOND CAUSE OF ACTION
### NEGLIGENCE AGAINST RESORT FUNDING

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

**A.    As to All Plaintiffs**

122.    As a result of its participation in the development, financing and sale of the French Quarter, Resort Funding owed a duty to the Plaintiffs to use due skill, care, reasonable expedience and faithfulness in its actions.

123.    Resort Funding breached those duties by:

a.    In accepting assignment of the consumer installment contracts at a time that it knew such contracts were invalid, deceptive and/or fraudulent;

b.    Participating in a deceptive and negligent sales process;

c.    Continuing to finance the French Quarter when it knew or should have known that the French Quarter was involved in wrongful, deceptive and/or fraudulent sales;

d.    Financing sales by French Quarter when French Quarter lacked the financial wherewithal to deliver clear title to the Plaintiffs;

e.    Failing to follow general lending industry practices, which, if followed, would have prevented the Plaintiffs' losses;

f.    Conspiring with John Qualey and Brian Taylor to avoid payment of French Quarter's secured lenders;

g.    And other breaches as outlined herein.

124.    Resort Funding's breaches of duty were made with reckless and/or wanton disregard for the rights of the Plaintiffs, and the Plaintiffs are entitled to an award of actual, consequential and punitive damages in amounts to be proven at trial.

125.    All members of the Building 8 Class and the Building 9 Class were damaged by losing their entire investment in French Quarter.

**B.     As to Resort Funding Subclasses**

126.    Resort Funding owed a duty to the Resort Funding Subclasses to use due skill, care, reasonable expedience and faithfulness in the servicing and collection of Timeshare Notes.

127.    Resort Funding breached those duties by:

a.      In accepting assignment of the consumer installment contracts at a time that it knew such contracts were invalid, deceptive and/or fraudulent;

b.      Financing sales by French Quarter when French Quarter lacked the financial wherewithal to deliver clear title to the Plaintiffs;

c.      Failing to follow general lending industry practices, which, if followed, would have prevented the Plaintiffs' losses;

d.      Servicing debts which Resort Funding knew were invalid and/or fraudulently incurred;

e.      And other breaches as outlined herein.

128.    Resort Funding's breaches of duty were made with reckless and/or wanton disregard for the rights of the Plaintiffs, and the Plaintiffs are entitled to an award of actual, consequential and punitive damages in amounts to be proven at trial.

129.    All members of the Resort Funding Subclasses were damaged by paying principal, interest and fees for properties which they do not own.

## FOR A THIRD CAUSE OF ACTION
### NEGLIGENCE AGAINST KEN TAYLOR,
### SPINNAKER DEVELOPMENT, AND BRIAN TAYLOR

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

130.    As a result of its participation in the development, financing and sale of the French Quarter, Ken Taylor, Spinnaker Development, and Brian Taylor owed a duty to the Plaintiffs to use due skill, care, reasonable expedience and faithfulness in the operation and management of French Quarter.

131.    Ken Taylor, Spinnaker Development, and Brian Taylor breached those duties by:

a.      Failing to prepare and/or record documents necessary to create valid timeshare interests in the relevant properties;

b.      Failing to obtain lien releases necessary to insure that the Plaintiff's had title interests superior to those of lenders;

c.      Failing to properly prepare deeds and other documents transferring title to the Plaintiffs;

d.      Failing to take reasonable action to protect the Plaintiff's timeshare interests;

e.      Failing to provide promised amenities and construction for the French Quarter project;

f.      Failing to properly capitalize the French Quarter project;

g.      Failing to property hire and supervise management and employees;

h.      Other actions as outlined herein.

132.    Ken Taylor and Spinnaker further breached their duties by hiring Brian Taylor and/or Whiteoaks Management at a time they had actual knowledge that Brian Taylor lacked the

requisite skill and attributes to manage the operations of the French Quarter.

133.    All Plaintiffs were damaged in that they lost their entire investment in the French Quarter.

134.    These breaches of duty were made with reckless and/or wanton disregard for the rights of the Plaintiffs, and the Plaintiffs are entitled to an award of actual, consequential and punitive damages in amounts to be proven at trial.

### FOR A FOURTH CAUSE OF ACTION
#### NEGLIGENCE AGAINST SOUTHWIND MANAGEMENT

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

135.    As the purported manager of the property and agent of the property owners association, Southwind Management Corp. owed a duty to use due care, loyalty and expedience in the collection of all fees, management of the property, and communications with Plaintiffs.

136.    Southwind Management breached its duties by:

a.    Failing to communicate essential and truthful information to the Plaintiffs;

b.    Collecting fees for "maintenance" of properties which did not exist and which would not be built;

c.    Collecting fees for properties which Southwind Management knew did not belong to the Plaintiffs;

d.    Failing to competently represent the Plaintiffs in the foreclosure and bankruptcy proceedings;

e.    Breaching the duty of loyalty owed to the Plaintiffs as agent by acting in foreclosure and bankruptcy at the direction of Ken Taylor and entities he owns or controls.

137.    All Plaintiffs were damaged because they paid management fees, maintenance

fees, property taxes, and property assessments on property that they did not own. The Plaintiffs were damaged by not receiving material information about the operation of the French Quarter. The Plaintiffs were damaged by losing their timeshare interests in foreclosure or bankruptcy.

138.    Southwind Management's breaches of duty were made with reckless and/or wanton disregard for the rights of the Plaintiffs, and the Plaintiffs are entitled to an award of actual, consequential and punitive damages in amounts to be proven at trial.

## FOR A FIFTH CAUSE OF ACTION
### CONSPIRACY AGAINST ALL DEFENDANTS

All prior allegations of the complaint are realleged here as if repeated verbatim.

139.    All Defendants joined together with French Quarter in a conspiracy to earn money from the sale and management of invalid timeshare interests and interests in a building which would not be built.

140.    The purpose of the conspiracy was to obtain money from the Plaintiffs, when the conspirators knew or should have known that the timeshare interests were invalid and/or voidable.

141.    The Plaintiffs were damaged by the loss of all payments made to or for the benefit of the Defendants, and other consequential damages to be proven at trial.

## FOR A SIXTH CAUSE OF ACTION
### MISSOURI MERCHANDISING PRACTICES ACT AGAINST RESORT FUNDING, KEN TAYLOR, BRIAN TAYLOR, SPINNAKER DEVELOPMENT, FRENCH QUARTER GROUP III AND SOUTHWIND MANAGEMENT

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

142.    All Defendants engaged in a scheme to sell invalid timeshare interests, conceal the invalidity of those interests, and collect fraudulent "fees" and interest payments when they

knew, or should have known, that the Plaintiffs would not have title to the interests they purchased.

143.    Resort Funding financed the sale of timeshares for the Plaintiffs knowing that the timeshare interests were invalid and unenforceable.

144.    Resort Funding financed the operations of French Quarter Group with knowledge that the interests being sold by French Quarter Group were invalid and/or subject to prior mortgages in default.

145.    Resort Funding accepted payments from the Plaintiffs while concealing its knowledge of the invalidity of the interests and the prior encumbrances.

146.    Resort Funding collected on the notes, threatened legal action against the Plaintiffs, and threatened to ruin the Plaintiffs' credit all while knowing that the timeshare interests were invalid or subject to loss in foreclosure.

147.    Resort Funding continued to finance French Quarter Group when it knew or should have known that French Quarter was insolvent and could not deliver title to the Plaintiffs.

148.    Resort Funding knew that continued financial support of French Quarter Group would continue fraudulent sales activities from which Resort Funding continued to earn money.

149.    Resort Funding continued to finance the purchase of timeshare interests in Building 9 when it knew or should have known that French Quarter did not have the assets to build Building 9.

150.    Southwind Management Corp. collected from the Plaintiffs management fees, maintenance fees, property taxes, use fees, and property assessments for property to which the Plaintiffs did not have title and for a building which does not exist.

151.    Southwind Management Corp. earned fees for their improper collection activities.

152.    Ken Taylor and Brian Taylor, personally and through the corporations they owned and/or controlled, orchestrated, facilitated and condoned the unfair practices as outlined herein.

153.    French Quarter Group and French Quarter III sold timeshares in Building 8 and building 9 with actual knowledge that such interests were invalid or subject to prior mortgages.

154.    The actions of all Defendants as outlined herein affect the public interest because the actions are capable of repetition and have been repeated many times.

155.    The actions of the Defendants as outlined herein (1) offend public policy as it has been established by the Constitution, statutes or common law, or by the Federal Trade Commission, or its interpretive decisions or (2) are unethical, oppressive, or unscrupulous; and (3) caused, substantial injury to consumers.

156.    The Defendants engaged in an unfair or deceptive trade practices under the Missouri Merchandising Practices Act (V.A.M.S 407.020, et seq.) or other applicable law.

157.    All members of the Building 8 Class and the Building 9 Class were damaged by these violations in losing their entire investment in French Quarter.

158.    The Plaintiffs are entitled to actual, consequential, and punitive damages and an award of reasonable attorneys' fees and costs pursuant to the Act.

## FOR A SEVENTH CAUSE OF ACTION
### MONEY HAD AND RECEIVED AGAINST
### RESORT FUNDING, FRENCH QUARTER III, SPINNAKER
### AND SOUTHWIND MANAGEMENT

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

159.    The Plaintiffs paid money to Southwind Management for management,

maintenance, taxes and other fees of property which the Plaintiffs did not own and for a building that does not exist.

160.    Southwind Management received funds from the sale of timeshares and the management of timeshares.

161.    At the time Southwind Management received these payments, they knew that the Plaintiffs did not own the timeshare interests, that such interests were subject to foreclosure, that Southwind's affiliates – French Quarter Group –  had breached its sale contract and warranty of title with the Plaintiffs, that the funds received were not being used for the represented uses, and that Building 9 would not be built.

162.    In equity and good conscience, the money paid to Southwind Management by the Plaintiffs should be refunded.

163.    All members of the Building 8 class and the Building 9 class are entitled to restitution of all sums paid to Southwind Management.

164.    The Resort Funding subclasses paid money to Resort Funding on the Timeshare Notes, which money was applied, in part, to the reduction of Spinnaker's debt to Resort Funding.

165.    At the time Resort Funding received assignment of the notes and received these payments, Resort Funding and Spinnaker knew, or should have known, that the Plaintiffs did not own the timeshare interests, that such interests were subject to foreclosure, that Resort Funding's agent and partner, French Quarter, had breached its sale contract and warranty of clear title with the Plaintiffs, that the funds were being used to support a fraudulent and or deceptive sales .

166.    In equity and good conscience, the money paid to Southwind Management, Resort Funding and for the benefit of Spinnaker by the Resort Funding Subclass Plaintiffs should

be refunded.

167.    The members of the Building 8 Resort Funding subclass and the Building 9 resort funding subclass are entitled to restitution of all sums paid to Southwind Management, Resort Funding and Spinnaker.

168.    The members of the Building 9 class paid money to French Quarter III for the purchase of property that French Quarter III did not own.

169.    In equity and good conscience, the money paid to French Quarter III should be refunded.

170.    The members of the Building 9 are entitled to restitution of all sums paid to French Quarter III.

## FOR AN EIGHTH CAUSE OF ACTION
### SUCCESSOR LIABILITY AGAINST SOUTHWIND HOLDINGS

All prior allegations of the complaint are realleged here as if repeated verbatim.

171.    Southwind Holdings is owned by the same people and entities that owned and controlled the French Quarter.

172.    Southwind Holdings is the mere successor to the French Quarter.

173.    The circumstances surround French Quarter's operations and the purchase of the assets by Southwind Holdings warrant a finding that there is a *de facto* merger or consolidation of the French Quarter companies into Southwind Holdings.

174.    Southwind Holdings continues to earn profits from the timeshare sales to the Plaintiffs.

175.    Southwind Holdings used the French Quarter bankruptcy as a scheme to shield itself, its affiliated companies (Regency Vacation Group, LLC, Regency Holdings Group, LLC,

Regency Resorts, Inc., Whiteoaks Management Corp., Spinnaker Development Corporation, Inc., Southwind Management Corp., Southwind Sales and Marketing, and Resort Amenities Group), and Ken Taylor from liability to the Plaintiffs.

176.    Southwind Holdings is liable for all claims of the Plaintiffs against French Quarter

as a successor to the French Quarter Group.

### FOR A NINTH CAUSE OF ACTION
**FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C.A. §1692
AGAINST RESORT FUNDING AND SOUTHWIND MANAGEMENT**

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

177.    Resort Funding was a debt collector because it used the United States mail and interstate communication for the collection of debts allegedly owed by the Plaintiffs, it regularly collects debts for others, and it was collecting debts asserted to be owed to French Quarter Group II, LLC and French Quarter Group III, LLC.

178.    Resort Funding used false and deceptive communications to the Plaintiffs by sending bills to the Resort Funding Subclass Plaintiffs at a time that Resort Funding knew that the Plaintiff's debts were invalid.

179.    Resort Funding is liable to the Resort Funding Subclass Plaintiffs for actual and statutory damages under the Fair Debt Collection Practices Act.

180.    Southwind Management was a debt collector because it used the United States mail and interstate communication for the collection of debts allegedly owed by the Plaintiffs, it regularly collects debts for others, and it was collecting debts asserted to be owed to French Quarter Condominium III Owners Association, LLC and French Quarter Condominium IV

Owners Association, LLC.

181.    Southwind Management used false and deceptive communications to the Plaintiffs by sending bills to the Plaintiffs at a time that Southwind Management knew that the Plaintiff's debts were invalid and that the funds collected were not being used for the ostensible purpose of the debt.    Resort Funding and Southwind Management concealed and omitted from the Plaintiffs information from which the Plaintiffs could have learned of these defendants fraudulent collections.

182.    Southwind Management is liable to the Plaintiffs for actual and statutory damages under the Fair Debt Collection Practices Act.

<div align="center">

### FOR A TENTH CAUSE OF ACTION
### R.I.C.O., 18 U.S.C.A. §1962,
#### AGAINST KEN TAYLOR, BRIAN TAYLOR, RESORT FUNDING,
#### SPINNAKER DEVELOPMENT  AND SOUTHWIND MANAGEMENT

</div>

All prior factual allegations of the complaint are realleged here as if repeated verbatim.

183.    Ken Taylor, Brian Taylor, Resort Funding, Southwind Management, Spinnaker Development and Southwind Management (RICO Defendants) are persons as defined by 18 U.S.C. §1961 because they each are capable of holding legal or equitable interests in property.

184.    The RICO Defendants conducted an association-in-fact enterprise to sell, finance and manage invalid timeshare interests in the French Quarter development in violation of 18 U.S.C.A. §1962(c ) (the "Enterprise").  Through a pattern of racketeering activity as set forth below, the RICO Defendants conducted an on-going Enterprise to defraud the Plaintiffs in the sale of timeshare interests by selling timeshares which were subject to unreleased liens.  These RICO Defendants operated as a unit to carry out the Enterprise through the sale of invalid

timeshare interests from December 2005 to May 2008.

185.    As part of the Enterprise, Ken Taylor and Brian Taylor guarantied the debts of the Enterprise, arranged for the sale of invalid timeshare interests, concealed the invalidity of those interests from Plaintiffs, and arranged for the collection of sales proceeds, "maintenance fees" and other charges through a series of corporations as outlined in this complaint. The Taylors obtained money from the Enterprise through the collection of Timeshare Notes and Maintenance Fees and those sums were paid to these defendants in the form of salaries, benefits and/or corporate dividends.

186.    As part of the Enterprise, Spinnaker Development purported to own the French Quarter development through subsidiary corporations, the managed the scheme and guarantied the debts of the Enterprise. Spinnaker obtained money from the Enterprise from the collection of invalid Timeshare Notes.

187.    As part of the Enterprise, Resort Funding loaned money necessary to the operation of the Enterprise, took assignment of Timeshare Notes, and served as collection agent for Timeshare Notes. Resort Funding obtained money from the Enterprise through the payment of servicing fees from the Enterprise and the collection of interest and fees from the Plaintiffs.

188.    As part of the Enterprise, Southwind Management served as "property manager" for the properties which the Plaintiffs purchased, and Southwind Management charged maintenance fees and other fees which were used in the operation of the Enterprise.

189.    The RICO defendants engaged in a pattern of racketeering activity with the intent of committing mail fraud as defined by 18 U.S.C. §1341.

190.    The RIOC engaged in a scheme to defraud the Plaintiffs by collecting money

from the sale, financing and management of timeshares when the Defendants knew that French Quarter did not deliver good title.

191.     Brian Taylor, Spinnaker and Resort Funding prepared, reviewed and/or approved all documents which were used in the all sales of timeshare interests to the Plaintiffs, and those documents were materially false in following respects:

a.     Settlement statements misrepresented that sales were closed on the date of purchase;

b.     Settlement statements misrepresented that the Plaintiffs paid for the purchase of title insurance;

c.     Warranty Deeds to the property provided standard seller warranties which were in breach at the time of sale;

d.     Warranty Deeds to the property stated a grantor that had no interest in the property;

e.     Sales documents stated that there were no prior liens of record on the title and that property was being delivered free and clear liens;

f.     Sales documents stated that maintenance fees would be used to maintain the timeshares;

g.     Sales documents stated that Property Owners Associations existed for the protection and promotion of the Plaintiffs' interests in property;

h.     Sales documents stated that there was no pending litigation relating to the property.

192.     After the sale of the timeshare interests in Branson, Missouri by French Quarter,

the false sales documents relating to transactions for the Resort Funding subclasses were transmitted by the U.S. mails from the French Quarter to Resort Funding, which reviewed and approved the documents before funding French Quarter under the Hypothecation Note.

193.    Resort Funding sent monthly notices through the U.S. mails to the Resort Funding Building 8 subclass for the purpose of collecting principal, interest and fees on Timeshare Notes when Resort Funding knew that title to Building 8 was invalid.  These notices were materially false in that such sums were not legally due.

194.    Resort Funding sent monthly notices through the U.S. mails to the Resort Funding Building 9 subclass for the purpose of earning fees as a loan servicer when Resort Funding knew that Building 9 would not be built.  These notices were materially false in that such sums were not legally due.

195.    Southwind Management sent through the U.S. mails annual statements for "maintenance fees" to all Plaintiffs when it knew that that title to buildings 8 and 9 of the French Quarter was invalid, that the maintenance fees were not being used as represented, that French Quarter could not construct Building 9, and that such sums were not legally due.

196.    Southwind Management, at the direction of Ken Taylor, sent through the U.S. mails letters to the Plaintiffs on December 10, 2009, December 29, 2008, and December 10, 2007.  These letters concealed the fact that the French Quarter property was in foreclosure, that title to the French Quarter timeshares was invalid, and that building 9 construction could not be constructed.

197.    Southwind Management, at the direction of Ken Taylor, sent through the U.S. mails letters to all Plaintiffs on December 22, 2010.  In this letter, the defendants misrepresented

that the Plaintiffs had legal representation in the pending French Quarter bankruptcies and foreclosure. In fact, the Plaintiffs had no legal, or non-legal, representation in the matter, and Southwind Management acted only to perpetuate the collection of bogus management fees and protect the interests of the Enterprise.

198.    All Defendants concealed known material facts about the foreclosure and state of the Plaintiffs' title, to wit: that the sales proceeds were not being applied to payment of liens on the property; that foreclosure was pending and that the Defendants had no intention of satisfying the pre-existing liens on the property; that French Quarter lacked the financial wherewithal to construct Building 9; that the bankruptcy and foreclosure would extinguish the Plaintiff's rights under their respective sales contracts; and that the Timeshare Notes were not supported by consideration.

199.    Spinnaker Development, at the direction of Ken Taylor, by several emails, including one dated August 23, 2009, arranged for the payment of Spinnaker's debts from funds fraudulently collected from the Plaintiff's by Resort Funding.

200.    Spinnaker Development, at the direction of Ken Taylor, by email dated November 24, 2009, arranged for Resort Funding to collect knowingly fraudulent debts Resort Funding Building 9 subclass.

201.    The agreements between Spinnaker and Resort Funding were made with the specific intent of collecting on principal, interest and fees on Timeshare Notes and on "Maintenance Fees" at a time when the French Quarter was in breach of contract, the Plaintiffs had not received clear title to the property, and such sums were not legally due.

202.    All Plaintiffs were damaged by purchasing timeshare interests that were

foreclosed or lost through the foreclosure and bankruptcy of French Quarter.

203.    All Plaintiffs were damaged by paying maintenance fees and other costs to Southwind Management which were not legally due.

204.    The Resort Funding subclass Plaintiffs were harmed by paying principal, interest and fees on Timeshare Notes that were not legally due.

205.    The RICO defendants are liable for treble damages, costs of suit, and attorneys fees as provided by 18 U.S.C. §1964(c).

## IV.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

1.    That the Court certify a class, or classes, as appropriate under Federal Rule of Procedure 23 and/or the Missouri Merchandising Practices Act;

2.    That the Court enter a money judgment against all Defendants, jointly and severally, for actual, consequential and punitive damages in amounts to be proven at trial on all causes of action;

3.    That the Court award attorneys fees and costs to the Plaintiffs as provided by law or contract;

4.    For other such relief as is equitable in the circumstances.

**THE CULVER FIRM, P.C.**


*/s/ Robert E. Culver*
Robert E. Culver, Esq.
Fed. Id. No.: 7289
575 King Street, Ste. A
Charleston, SC 29403
Email: bob@culverlaw.net
Phone: 843-853-9816
Facsimile: 843-853-9838

Dated: April 30, 2013