**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| David Case, Sharon Case, Jay D. Smith, Dana Smith, Charles E. Nichols, Diane E. Nichols, Kenneth Stithem, Laurie Stithem, Willard Mann, and LaMay Mann, each individually and on behalf of a class similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>Plantation Title Company, Inc., *et al*.,<br><br>               Defendants. | Civil Action No. 9:12-CV-2518-DCN-BM |
| David Case, Sharon Case, Jay D. Smith, Dana Smith, Charles E. Nichols, Diane E. Nichols, Kenneth Stithem, and Laurie Stithem, each individually and on behalf of a class similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>French Quarter Group, III, LLC, *et al*.,<br><br>               Defendants. | Civil Action No. 9:12-CV-2804-DCN-BM |

**ORDER APPOINTING CLASS REPRESENTATIVES,**
**CLASS COUNSEL, AND CLAIMS ADMINISTRATOR,**
**AND PRELIMINARILY APPROVING SETTLEMENT CLASS AND CLASS**
**NOTICE**

This matter is before the Court on the parties' Joint Motion for Appointment of

Class Representatives, Class Counsel, Claims Administrator, Certification of Settlement

Class, and Preliminary and Final Approval of Class Notice and Class Settlement

(hereinafter "Joint Motion for Class Settlement"). David Case, et al. v. Plantation Title Company, Inc., et al, C/A No. 9:12-CV-2518, (the "Plantation Title Action"), Dkt. No. 270; David Case, et al. v. French Quarter Group III, LLC, et al., C/A No. 9:12-CV-2804, (the "French Quarter Action"), Dkt. No. 235. Having now heard and considered the points and authorities set forth in the Joint Motion for Class Settlement, this Court hereby Orders and Directs:

    a. The Court gives preliminary approval of the Conditional Class Action Settlement Agreement ("Settlement Agreement") contingent on final approval at the Final Fairness Hearing;

    b. The Court approves the notice and claims procedure set out in the Settlement Agreement;

    c. The Court appoints Angeion Group as Claims Administrator who is hereby authorized to effectuate the notice and claims procedure as set forth in the Settlement Agreement, including the expenditure of necessary funds;

    d. The Court appoints David Case, Sharon Case, Jay D. Smith, Dana Smith, Willard Mann, La May Mann, Charles Nichols, Diane E. Nichols, Kenneth Stithem, and Laurie Stithem as Class Representatives for the Settlement Class, and Willard Mann and La May Mann as Class Representatives for the Escrow Subclass;

    e. The Court appoints Pierce, Herns, Sloan & Wilson, LLC, and The Culver Firm, P.C., as Class Counsel; and

    f.  The Court schedules a Final Fairness Hearing for July 15, 2015 at 10:00 a.m. and a Final Appeals and Distribution Hearing on August 11, 2015 at 11:00 a.m.

## BACKGROUND

This litigation and proposed class settlement relate to the sale and purchase of timeshare intervals in Buildings 8 and 9 of the French Quarter Resort in Branson, Missouri, the subsequent bankruptcy of the resort's developer, and the Settlement Class Members' loss of those timeshare intervals.  The Settlement Class is composed of all persons who purchased a timeshare unit in either Building 8 or 9, excluding those who rescinded their purchase and those who opt out of the class.  The parties have also proposed an Escrow Subclass composed of 12 couples who paid in full for their purchases by sending payment to Defendant Qualey Law Firm, P.A. and whose entire payment was escrowed by the Qualey Law Firm.  The proposed class settlement is a compromise of the claims that the class members have against the Defendants, who Plaintiffs allege are vicariously liable for the class losses.  Pursuant to the settlement, Authorized Claimants can choose between receiving a timeshare interval at a different building at the French Quarter Resort or participating in a cash settlement fund.  In addition, any outstanding debt owed by class members to Defendants will be forgiven.  In exchange, the Defendants will receive a full release from all potential claims that could be asserted by the class.

## I.    SUMMARY OF CLAIMS AND DEFENSES

Plaintiffs filed the Plantation Title Action on August 31, 2012, and the French Quarter Action on September 26, 2012.  The French Quarter Action asserts claims against Defendants French Quarter Group, III, LLC, Spinnaker Development Corp., Inc., Southwind Management Corp., Southwind Holdings, Inc., Ken Taylor, and Brian Taylor (the "Taylor Defendants") and Resort Funding, LLC, arising out of their alleged

involvement in the development, sale, and financing of the Buildings 8 and 9 at the French Quarter Resort.  Plaintiffs asserted causes of action for breach of contract, negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy, Missouri Merchandising Practices Act violation, and money had and received against all Defendants as well as a cause of action under R.I.C.O., 18 U.S.C.A. § 1962 against the Taylor Defendants.  Third Amended Complaint, the French Quarter Action, C/A No. 9:12-CV-2804, Dkt. No. 138.

The Plantation Title Action asserts claims against Plantation Title Agency, Inc., John P. Qualey, Jr., the Qualey Law Firm, P.A., and Chicago Title Insurance Company arising out of their alleged roles in failing to close, settle, and obtain title insurance for class members' timeshare interval purchases.  Plaintiffs asserted causes of action for breach of contract, negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy, and Missouri Merchandising Practices Act violation against all Defendants as well as causes of action for money had and received, conversion, and claim and delivery against Plantation Title Agency, Inc., John P. Qualey, Jr., and the Qualey Law Firm, P.A. ("Qualey Defendants").  Third Amended Complaint, Plantation Title Action, C/A No. 9:12-CV-2518, Dkt. No. 79.

The full allegations are set out in the Complaints, and a summary of same is set out in the Joint Motion for Class Settlement.  In short, starting in November of 2005, French Quarter Group II, LLC, French Quarter Group III, LLC and Grand Regency Group, LLC (collectively the "French Quarter Developer") started selling timeshare intervals in Building 8 and Building 9 at the French Quarter Resort.  The sales were, for the most part, made on a pre-construction basis.  Around 1,100 purchasers, mostly

couples, entered around 1,600 contracts to purchase timeshare intervals in Building 8 and Building 9 at the Resort (some buyers entered multiple transactions).

Plaintiffs allege that the sales documents presented to the class members in Branson indicated that the class members would receive immediate title to, and title insurance for, the timeshare units they were purchasing, and that the warranty deeds they received would be recorded.  In fact, the warranty deeds provided to the purchasers were not recorded, and they did not receive title insurance policies.

The French Quarter Developer completed Building 8 but did not clear certain liens on the building.  The French Quarter Developer never started construction on Building 9.  A lienholder started a foreclosure proceeding on Building 8.  In response, French Quarter Group, LLC, French Quarter Group II, LLC, and Grand Regency Group, LLC, declared bankruptcy here in South Carolina.  Building 8 was eventually foreclosed on, wiping out any interests that the purchasers may have had there.  The remainder of the development, including the consumer notes signed by Building 8 and 9 purchasers, was sold by the bankruptcy trustee to Defendant Southwind Holdings, Inc., wiping out any interests the Building 9 purchasers may have had.  Many Building 8 and 9 purchasers filed claims in the bankruptcy and received a portion of the contract price paid for their timeshare intervals, but they all lost title to their timeshare intervals.

There are four sets of Defendants.  Plaintiffs alleged the Taylor Defendants owned and controlled the French Quarter Developer throughout the development and sales of Building 8 and 9 and purchased what was left of the project out of bankruptcy. Plaintiffs allege a variety of alter ego styled claims against the Taylor Defendants. Defendant Resort Funding financed the development and construction of Building 8 and

6

9, financed the consumer loans to purchasers of Building 8, and collected on the consumer loans to purchasers of Building 8 and 9. Plaintiffs allege a variety of lender liability claims against Resort Funding. Plaintiffs also allege that Southwind Holdings and Resort Funding continued to collect on the consumer debt after the bankruptcy.

The Qualey Defendants acted as attorneys for French Quarter. Plaintiffs allege that the sales documents provided to purchasers indicated that Defendant Plantation Title Agency would act as a settlement agent, record the purchasers' deeds, and provide title insurance. Plaintiffs further allege that the Qualey Defendants were negligent and breached their agreements with the purchasers in that they did not settle the transactions, record the deeds, or provide title insurance. Plaintiffs have alleged that Defendant Chicago Title is liable to the purchasers as the underwriter and principal of Defendant Plantation Title.

For their part, Defendants allege that the sales documents disclosed that the purchasers of Building 8 and 9 would not immediately receive title to their timeshare units, and the purchasers assumed the risk of a failure of the French Quarter Resort. Defendants also assert that none of them had a direct relationship with the purchasers, had no communications with the purchasers, and therefore owed them no duty. According to the Defendants, all of the purchasers' losses were solely caused by the acts of the French Quarter Developer, for which they are not responsible. Finally, Defendants have claimed that the purchasers' claims are barred by the statute of limitations.

## II.   **ALLEGED DAMAGES**

The parties and Plaintiffs' valuation expert Ronald Burkett have estimated the class losses. The original financial records of the French Quarter Developers are not

available to the parties, so the losses are estimates based on the information available to the parties. For purposes of the settlement, the parties have focused on estimating the out-of-pocket losses of the purchasers of Building 8 and 9.

According to the estimates for Building 8, the total contract purchase price for all Building 8 buyers, except those who were foreclosed on or declared bankruptcy, was $12,136,806.[1] In addition, Building 8 buyers who were foreclosed on paid $196,643 on their purchases prior to losing their interests. In addition, all Building 8 buyers paid additional settlement charges not included in the purchase price of $111,900. With regards to deductions, Building 8 buyers received $541,795 in payments on claims in the French Quarter Bankruptcy. Finally, Building 8 buyers have an outstanding principal owed on installment notes of approximately $3,056,175.55. Accordingly, the total class losses on sales of Building 8 are approximately $8,847,378.45.[2]

The total contract price for Building 9 purchasers that were not foreclosed on is estimated to be $6,669,956. Payments made by Building 9 purchasers who were foreclosed on are $22,953. Settlement charges not included in the purchase price were $35,675. Building 9 buyers received $256,901 in payments from the French Quarter Bankruptcy. Finally, Building 9 buyers have an outstanding principal owed on installment notes of approximately $1,175,825.06. Accordingly, the total class losses on sale of Building 9 timeshare units are approximately $5,295,857.94. Thus, the total out of pocket class losses are estimated to be around $14,143,236.

## III.    THE PROPOSED SETTLEMENT

As a preliminary matter, it appears that the proposed Class Settlement is the result

---

[1] This figure includes amounts by the Escrow Subclass.
[2] This amount does not include maintenance fees or prejudgment interest.

of an arms' length negotiation between experienced and well-informed counsel. The litigation has continued for over two and a half years and was in the final stages of discovery. Written discovery was complete, most depositions of fact witnesses had been completed, and Plaintiffs had produced their expert reports prior to mediation. Plaintiffs' Motion for Class Certification was fully briefed, as was Defendant Chicago Title's Motion for Summary Judgment.

The parties mediated this litigation in October of 2014. Plaintiffs' Counsel reached a tentative settlement with Resort Funding and the Taylor Defendants at mediation. Plaintiffs' Counsel reached a tentative settlement with Chicago Title shortly following mediation, and eventually a tentative settlement was reached with the Qualey Defendants in December.

In full settlement of the claims of the Settlement Class Members against the Defendants, Defendants have agreed to provide the following consideration:

     i.     Resort Funding, LLC will pay Two Million Dollars and No Cents ($2,000,000.00);

     ii.     Chicago Title Insurance Company will pay Five Hundred Thousand Dollars and No Cents ($500,000.00);

     iii.     The Taylor Defendants will pay Five Hundred Thousand Dollars and No Cents ($500,000.00); and

     iv.     The Qualey Defendants will pay One Million Dollars and No Cents ($1,000,000.00) plus One Hundred and Twenty-Nine Thousand Two Hundred Fifty-Nine Dollars and Seventy-Five Cents ($129,640.24), representing all funds from sales of Building 8 and 9 intervals held in escrow by the Qualey Law Firm.

Together, the payments set forth herein, which total Four Million One Hundred and Twenty-Nine Thousand, Six Hundred and Forty Dollars and Twenty-Four Cents ($4,129,640.24), shall constitute the Settlement Payment.

The funds will be used to pay approved attorney's fees, litigation costs, incentive payments to Named Plaintiffs, and administrative costs.   In other words, Defendants' payments are limited to the amounts set out above.  After payment of the approved costs, the Net Settlement Fund will be disbursed to Authorized Claimants who opt to receive cash payments on a pro rata basis based on their out-of-pocket losses as set out above. The parties estimate that approximately $1,400,000 will be available for these claimants.

In addition, the Taylor Defendants have agreed to provide up to three-hundred (300) timeshare intervals at French Quarter Resort, termed the "Timeshare Interval Pool" in the Settlement Agreement.  Authorized Claimants may participate in the Net Settlement Fund or the Timeshare Interval Pool, but not both.  Authorized Claimants who elect to participate in the Timeshare Interval Pool will receive what they originally paid for - a timeshare interval at the French Quarter Resort.  The value of these timeshare units is estimated to be $3,600,000.

Finally, all Settlement Class Members who still owe money on the consumer notes now held by Southwind Holdings will receive debt forgiveness.  This settlement will insure that the Defendants will cease all collection activities and forgive approximately $4,232,000 in outstanding debt to Settlement Class Members.

The parties have agreed that the Settlement Class will include all persons who purchased timeshare intervals in Building 8 or 9 of the French Quarter Resort but will exclude purchasers who timely rescinded their purchases or who opt out of the settlement and purchasers who exchanged their timeshare interval in Building 8 or 9 for a timeshare interval in a different building at the French Quarter Resort.  In addition, the parties have agreed to create an Escrow Subclass consisting of all Settlement Class members who paid

in full for their timeshare intervals by sending the balance of their payments to the Qualey Law Firm and whose entire payments are still held in escrow by the Qualey Law Firm, a total of twelve couples.  The Escrow Subclass Members can elect to receive a timeshare interval or participate in the cash pool.  If the Escrow Subclass Member elects to participate in the cash pool, they will receive their entire escrowed payment, as opposed to a pro rata amount, reduced by 20% so that they bear some of the costs of the class settlement.

## IV.     PROPOSED NOTICE AND CLAIMS PROCEDURE

Following preliminary approval by the Court, a copy of the Notice and Claim Form, including a Proof of Claim Form, will be mailed directly to all Settlement Class Members identified by the parties.  Joint Motion for Settlement, Plantation Title Action, C/A No. 9:12-CV-2518, Dkt. No. 270; French Quarter Action, C/A No. 9:12-CV-2804, Dkt. No. 235.  Members of the Escrow Subclass will receive a slightly different Notice. The Claim Forms will be individualized and identify each Class Member's Loss based on information available to the parties.  The Notices and Claim Forms are attached to the Joint Motion for Class Settlement.

In addition, notice of the Class Settlement will be published in at least one national topical magazine and on any known internet bulletin boards dedicated to consumers and timeshare units.  The Claims Administrator will also set up a website and hotline giving details of the settlment and how to file claims.

The Claim Form will allow each Settlement Class Member to elect between receiving a pro rata distribution of cash or a timeshare interval.  The Claim Form will request, but not require, information related to the Settlement Class Member's purchase.

The Claim Form will also include a Proof of Claim for Settlement Class Members to complete if (1) the Class Member's Loss is unknown to the parties, or (2) if the Settlement Class Member disagrees with the amount listed as the Settlement Class Member Loss.  Settlement Class Members will be asked to submit any support establishing their loss if they are submitting a Proof of Claim.

The Claims Administrator will reach a determination approving, rejecting, or partially rejecting any Proof of Claim received.  Each Settlement Class Member whose Proof of Claim is rejected or partially rejected will have an opportunity to appeal to the District Court for a final determination on the Proof of Claim.

Each Claim Form sets out the notice and review process, including deadlines to opt-out of the class settlement, object to the class settlement, object to the application for attorney's fees and costs, and submit a Claim Form and/or Proof of Claim.  It will also provide the date for the Final Fairness Hearing, the Appeals and Distribution Hearing, and procedures for individual Settlement Class Members to appear at same.

The Court will hold the Final Fairness Hearing to consider the substance of the proposed settlement, Class Counsel's application for attorney's fees and costs, and Incentive Payments to the Named Plaintiffs.  If the Court approves the settlement, it will hold an Appeals and Distribution Hearing on any appeals of rejected or partially rejected proofs of claim and to finalize a distribution order.

## **PRELIMINARY FINDINGS**

There is a "strong judicial policy in favor of settlements, particularly in the class action context. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). "[S]ettlement classes have proved to be quite useful in resolving major class action

disputes. While their use may still be controversial, most courts have recognized their utility and have authorized the parties to seek to compromise their differences including class action issues, through this means." *S. Carolina Nat. Bank v. Stone*, 749 F.Supp. 1419, 1428-29 (D.S.C. 1990).

## PRELIMINARY APPROVAL OF SETTLEMENT

The Court preliminarily finds that the proposed Class Settlement as outlined in the Settlement Agreement and Joint Motion for Class Settlement meets the requirements of Rule 23(a) and 23(b)(1)(B). Preliminary class certification is appropriate because these actions satisfy the requirements set forth in Rule 23(a) of (1) numerosity, (2) commonality, (3) typicality, and (iv) adequacy of representation.

Furthermore, the Court preliminarily finds that proposed Class Settlement meets the requirements set forth in Rule 23(b)(3):

> [T]hat the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Court preliminarily certifies the proposed Class Settlement on the understanding that, in the event that the Settlement Agreement shall be terminated for any reason or the Class Settlement is not approved, the Defendants shall retain the same rights to oppose certification of a class that they had prior to the execution of such Settlement Agreement.

## APPROVAL OF NOTICE PLAN

Fed. R. Civ. P. 23(e) requires that the court approve any proposed settlement or compromise in a class action suit and that notice of the settlement be given to all class members:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1)     The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> >
> > (2)     If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> >
> > (3)     The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> >
> > (5)     Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

The Court has considered the notice and claim plan set forth in the Settlement Agreement, the proposed form of notice, including the Class Notices, Claim Forms, and Proof of Claim Forms attached to the Joint Motion for Class Settlement, the publication notice, and the proposed claim procedure. The Court finds that the form and manner of notice proposed by the parties meets the requirements of due process and Rule 23(e), provides the best notice practicable under the circumstances, constitutes sufficient notice to all persons entitled to notice, and satisfies the constitutional requirements of notice.

Beginning on the date on which this Order is entered, notice will be provided to Settlement Class Members substantially in the form that has been submitted by the parties. Joint Motion for Settlement, Plantation Title Action, Exhibits No. 1-A-1, 1-A-2,

1-A-3, C/A No. 9:12-CV-2518, Dkt. No. 270; French Quarter Action, C/A No. 9:12-CV-2804, Dkt. No. 235. Class Notices, Claim Forms, and Proofs of Claim will also be provided to any additional persons who respond to the publication notice.

The Court hereby appoints the Angeion Group as the Settlement Administrator for the purpose of providing the Notices, Claim Forms, and Proofs of Claim as set out above and for otherwise administering the claims process. The Settlement Administrator will also set up and oversee a website that will include links to all relevant settlement documents and a toll free hotline to respond to questions from claimants.

A proposed schedule for the noticing of this Class Settlement, review of any objections and claims, and review of any Proofs of Claim or appeals thereof is attached to the Joint Motion for Class Settlement. Joint Motion for Settlement, Exhibit No. 12, Plantation Title Action, C/A No. 9:12-CV-2518, Dkt. No. 270; French Quarter Action, C/A No. 9:12-CV-2804, Dkt. No. 235.

## APPROVAL OF CLASS REPRESENTATIVES AND CLASS COUNSEL

As part of the Class Settlement, the parties seek the appointment of Pierce, Herns, Sloan & Wilson, LLC, and The Culver Law Firm, P.C., as Class Counsel and the appointment of David Case, Sharon Case, Jay D. Smith, Dana Smith, Willard Mann, La May Mann, Charles Nichols, Diane E. Nichols, Kenneth Stithem, and Laurie Stithem as Class Representatives for the Settlement Class, and Willard Mann and La May Mann as Class Representatives for the Escrow Subclass (collectively the "Named Plaintiffs").

The Culver Law Firm and Pierce Herns have litigated this matter for over two and a half years. They have nearly completed discovery, including conducting extensive written discovery, pursuing discovery motions, and taking and defending 42 depositions.

They have vigorously prosecuted this action, including preparing extensive complaints and briefs on class certification and summary judgment. They have retained and produced reports from eight experts. They have expended nearly $600,000 in expenses to prosecute these actions. Finally, they negotiated the settlement herein, which, if approved, will bring substantive relief to the entire class.

They currently represent over 200 class members. Even though there are over 1,000 potential class members spread out all over the country, no other class member or attorney has attempted to pursue class relief in this matter. Accordingly, the Court appoints The Culver Law Firm and Pierce Herns as Class Counsel.

The Named Plaintiffs have aided in the prosecution of this matter. They have provided documents, declarations, and testimony in South Carolina and made themselves available to Class Counsel for information regarding their purchases. One spouse from each couple attended mediation here in South Carolina. For the most part, their losses exceed the average losses of the other class members. The Court therefore appoints the Named Plaintiffs as Class Representatives.

## HEARING DATES

**Final Fairness Hearing.** A Final Fairness Hearing on the Class Settlement will be held on July 15, 2015 at 10:00 a.m. to determine whether 1) the proposed Class Settlement is fair, adequate, and reasonable and should be approved by the Court, 2) Class Counsel's requested attorney's fees and costs are reasonable and should be reimbursed from the settlement proceeds, and 3) whether the Named Plaintiff's Incentive Payments are fair and reasonable. At the Final Fairness Hearing, any person or entity who is a Settlement Class Member and who has timely filed an objection to the Class

Settlement may appear in person or through counsel and may be heard in support of or in opposition to the fairness, reasonableness, and adequacy of the Class Settlement.  In addition, any person or entity who is a Settlement Class Member and who has timely filed an objection to Class Counsel's requested attorney's fees and cost or the Named Plaintiff's Incentive Payments may be heard in support of or in opposition to the fairness, reasonableness, and adequacy of those fees and costs.  Any Settlement Class Member who does not timely file an objection to the Settlement shall be deemed to have waived any and all objections, other than those regarding specific claims, and shall be foreclosed from objecting (by appearance or otherwise) to the proposed Settlement.

**Hearing on Appealed Claims, Administrative Costs, and Final Distribution.** If the Class Settlement is approved by the Court, a hearing on appealed claims that have been rejected in whole or in part, on costs related to the administration of the settlement, and on the final distribution of funds will be held on August 11, 2015 at 11:00 a.m. to determine whether any claims denied in whole or in part and appealed by the claimant should be affirmed or reversed and to address any other disputes regarding individual claims.  In addition, any Settlement Class Member who has timely filed an objection to any request for the costs of administering the settlement may appear in person or through counsel and may be heard in support of or in opposition to the fairness and reasonableness of the costs of administering the settlement.

17

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 5, 2015**
**Charleston, South Carolina**